Janis McCracken **ORT**, Appellee,

v.

Nancy **KLINGER** and Montrose Church of the Nazarene, Appellants.

No. 92–369.

Court of Appeals of Iowa.

Dec. 29, 1992.

Alanson K. Elgar and W. Kent Thomson of the Elgar Law Office, Mt. Pleasant, for appellants.

Michael G. Dieterich of Cahill, Dieterich & Schilling, Burlington, and George E. Wright of Napier, Wright & Wolf, Fort Madison, for appellee.

Heard by DONIELSON, P.J., HABHAB, J., and KEEFE, Senior Judge.*

KEEFE, Senior Judge.

On October 7, 1989, Nancy Klinger was driving a van north on U.S. Highway 61 in Fort Madison. The owner of the van was the Montrose Church of the Nazarene. A Ford Escort, which was traveling north in front of Klinger, stopped to make a left turn. Klinger hit the Escort, sending it into the oncoming southbound lanes of traffic, where it collided with an automobile being driven by Janis Ort. Ort cut her face and hurt her shoulder, neck, lower back, and right foot.

Ort filed suit against Klinger and the church. The jury found that defendants were fully at fault and that defendants' fault was a proximate cause of plaintiff's damage. Ort was awarded damages of $176,618. Defendants' motion for a new

---

* Senior Judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

trial and in the alternative for remittitur was denied. Defendants appealed.

Our standard of review is for the correction of errors at law. Iowa R.App.P. 4.

■ I. Defendants first contend the trial court abused its discretion by not allowing certain opinion testimony of Dr. Nieman concerning plaintiff's medical problems relating to chiropractic treatments. We apply an abuse of discretion standard in reviewing a trial court's ruling excluding the testimony of a witness. *Loftsgard v. Dorrian*, 476 N.W.2d 730, 732 (Iowa App. 1991). We are committed to a liberal rule on the admission of opinion testimony. *De-Burkarte v. Louvar*, 393 N.W.2d 131, 138 (Iowa 1986). See also Iowa R.Evidence 702.

Defendants made no offer of proof, but offered Dr. Nieman's full deposition at trial and in later motions. We note the following discussion in *Loftsgard:*

> We are not convinced the plaintiff preserved error on this issue for we are unable to find that an offer of proof was made as to the substance of the expert's testimony. [Citations]. Nonetheless, when we address this issue on the merits, we find no abuse of discretion in the trial court's ruling.

476 N.W.2d at 732. Similarly, in the present case we are not convinced the defendants preserved error. Nonetheless, we will address this issue on the merits.

■ Throughout Dr. Nieman's testimony he was allowed to testify to his opinion generally that chiropractic treatments could have aggravated the plaintiff's injury. Dr. Nieman testified:

> I think chiropractors can be very useful, and I don't object to them; but when you have a situation of a kind of a chronic pain up here in the neck itself and the back constant manipulation can actually tear the tissues further and aggravate the process.... I find the physical therapists who I have worked with and swimming exercise to be more useful than the chiropractor.

Dr. Nieman stated that for patients with a chronic cervical or lumbosacral strain, manipulation of the neck could actually continue the process and become counter-productive. He further testified:

> Now, if the chiropractor is using heat, massage and ultrasound of the neck and gentle range of motion, I wouldn't have any objections; but if it requires a manipulation type thing, which is a sudden jerking of the neck itself and lower back, I think that can aggravate the problem and actually can make it much worse and actually keep it going for a much longer time than it needs to.

In his testimony he stated that the effect of chiropractic treatments on any injury would depend on what type of treatment the patient received. He did not know what type of chiropractic treatment plaintiff received. The trial court, therefore, would not allow him to opine as to the effect of chiropractic treatments on plaintiff's injury.

This record is replete with Dr. Nieman's opinion as to how chiropractic treatment could be counter-productive and could possibly hinder recovery or further injure a patient. His position was fully presented to the jury on this issue.

We conclude the trial court did not abuse its discretion when it excluded this limited testimony by Dr. Nieman. We affirm on this issue.

II. Defendants' next contention is that the trial court erred by refusing to give the jury the instruction they requested on the issue of mitigation of damages. *See* Iowa R.Civ.P. 196. They further contend the instruction given by the trial court confused the jury and was prejudicial.

■ The parties are entitled to have their legal theories submitted to a jury if the theories are pleaded and are supported by substantial evidence. *Fuches v. S.E.S. Co.*, 459 N.W.2d 642, 643 (Iowa App.1990).

The defendants requested the court to give the following instruction:

> A Plaintiff has a duty to [make use of reasonable means to effect a speedy cure of his/her injuries as reasonably possible] [take reasonable steps which would

have lessened or reduced any damages]. This is known as mitigation of damages.

Defendant claims Plaintiff was at fault by failing to mitigate damages. Failure to mitigate damages constitutes fault.

"Failure to mitigate" means failing to exercise ordinary care to [obtain reasonable medical treatment] [take reasonable steps] which would have lessened or reduced any injuries to damages sustained. An injured person has no duty to undergo a serious or speculative surgical operation or medical procedure, but if by slight expense and inconvenience, a person exercising ordinary care could have reduced the consequences of his/her injury, and failed to do so, he/she cannot recover for any damages that might have been avoided.

If you find that Plaintiff failed to mitigate damages, you will include this as part of Plaintiff's fault in your comparison of fault.

The burden is on the Defendant to prove Plaintiff failed to mitigate damages.

The instruction appears to be a combination of Iowa Uniform Civil Jury Instruction 400.7 with additional language provided by defendants.

The trial court first gave instruction No. 11, which informed the jury of the defendants' burden to prove the claim of mitigation of damages. It then gave the following instruction, No. 15:

A plaintiff has a duty to make use of reasonable means to effect a speedy cure of her injuries. This is known as mitigation of damages. Failure to mitigate damages constitutes negligence.

"Failure to mitigate" means failing to exercise ordinary care to take reasonable steps which would have lessened or reduced any injuries or damages sustained. An injured person has no duty to undergo a serious or speculative surgical operation or medical procedure, but she must use ordinary care in following the orders of her treating chiropractors and physicians. If by slight expense and inconvenience a person exercising ordinary care could have thus reduced the conse-

quences of her injury, and failed to do so, she cannot recover for any damages that might have been avoided.

It is interesting to note that defendants' requested instruction again points out to the jury that they are claiming plaintiff failed to mitigate damages and that they have the burden to prove their claim. The trial court's instruction No. 15 did not point out this burden again.

■ This court must view the evidence in the light most favorable to the party requesting the instruction. *Knauss v. City of Des Moines*, 357 N.W.2d 573, 576 (Iowa 1984). In addition, instructions must be read and construed together, not piecemeal or in artificial isolation. *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). A court may refuse to give an instruction where the matter is adequately covered in another instruction. *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 324 (Iowa 1992). The trial court is also free to draft jury instructions in its own language as long as they fairly cover the issues. *Norton v. Adair County*, 441 N.W.2d 347, 358 (Iowa 1989); *Sanders*, 421 N.W.2d at 522; *Schuller v. Hy–Vee Food Stores*, 407 N.W.2d 347, 351 (Iowa App.1987).

■ Defendants' main complaint against the court's instruction No. 15 is that it limited the mitigation issue to her treating chiropractors and physicians and did not include defendants' examining physicians. The instruction did not just state "obtain medical treatment" or "take reasonable steps" to reduce her injury or damages.

The evidence shows the accident occurred on October 7, 1989. Dr. Nieman saw plaintiff on January 22, 1992, Dr. Robb saw her August 5, 1991, and Dr. Hines saw her December 19, 1992. Each saw her only to evaluate, not to treat her injuries. Each of these doctors testified to certain exercise programs and physical therapy they would have advised to reduce her injury and damage. They also went further and testified of other things she might have done or should do in the future.

Plaintiff's treating physician and chiropractors testified that they advised exer-

cise and physical therapy for plaintiff. Plaintiff testified that she did exercise, as prescribed, on a regular basis and that she had physical therapy from Dr. Courtney and Dr. Hines.

A plaintiff has a duty to use ordinary care in consulting a physician. *Miller v. Eichhorn*, 426 N.W.2d 641, 643 (Iowa App.1988). An injured person is under no absolute duty to follow a physician's advice in order to minimize damages, but is only under a duty to use ordinary care in the matter of following such advice. *Fuches v. S.E.S. Co.*, 459 N.W.2d 642, 643 (Iowa App.1990); 22 Am.Jur.2d *Damages* § 533 (1988); 25 C.J.S. *Damages* § 36 (1966). *See also Tanberg v. Ackerman Investment Co.*, 473 N.W.2d 193, 196 (Iowa 1991).

If we accept the defendants' attack on instruction No. 15 we would then add an affirmative requirement to the concept of due care which is not required by Iowa law on mitigation of damages. She could not know what physicians would advise her to do many months after the accident. The testimony shows what plaintiff's treating physician and chiropractors advised the plaintiff to do. It also shows what plaintiff testified she did. Defendants' examining physicians testified what they thought was proper. All of this showed the jury the claims of the parties. The court fairly and properly instructed on the issue of mitigation. We find the instruction was not confusing to the jury and no prejudice was shown.

III. The final contention of defendants is that the trial court abused its discretion in failing to order a new trial or in the alternative a remitter of excessive damages. The standard of review is again abuse of discretion.

The trial court may grant a new trial where the jury verdict was apparently influenced by passion or prejudice, resulting in either excessive or inadequate damages, where the verdict is not sustained by sufficient evidence, or is contrary to law. Iowa R.Civ.P. 244(d), (f). The court can grant a new trial, or impose conditions pursuant to rule 250. A new trial is not a matter of right. *Cowan v. Flannery*, 461 N.W.2d 155, 157 (Iowa 1990).

The trial court had a broad but not unlimited right to determine if the verdict effectuated substantial justice between the parties. *Id.* at 158. A review court does not set aside a verdict simply because it might have reached a different conclusion. *Id.* It is not for this court to invade the province of the jury. *Id.*

In considering whether the verdict is excessive, the evidence must be considered in the light most favorable to the plaintiff. *See DeBurkarte v. Louvar*, 393 N.W.2d 131, 139 (Iowa 1986).

One of defendants' own medical expert witnesses in this case, Dr. Nieman, testified that plaintiff had a permanent impairment of 15% to 16%. Dr. Nieman stated that he had no doubt the accident had caused plaintiff pain which was continuing more than two years after the accident. He testified plaintiff had headaches which were caused by the accident and that she was unable to engage in tasks such as long-distance driving, which require repetitive movement of the neck.

Another of defendants' expert witnesses, Dr. Robb, testified plaintiff had suffered sprains in her neck, lower back, and right foot. He found she was still experiencing pain from these injuries. However, he stated he did not believe the injuries were permanent.

Dr. Hines, one of plaintiff's experts, testified that plaintiff suffered a rather significant cervical sprain and that the accident caused her to have posttraumatic migraine headaches. He testified the injuries were permanent. Plaintiff was treated by two chiropractors—Dr. Courtney testified that she had a 30% disability rating of the entire body and Dr. Ehlers testified she had a 40% whole body permanent impairment rating. Both chiropractors used the American Medical Association permanent impairment guide. Evidence was also presented to show plaintiff was thirty-four years old at the time of the accident and her life expectancy was 43.91 years.

We find there was substantial evidence to support the jury verdict. No passion or prejudice has been shown by defendants. The question of damages is a question of fact. The damages issue here was fairly and completely tried by competent evidence. In jury trials the controverted fact issues are for the jury to decide, not the court. *Hengesteg v. Northern Engineering, Inc.*, 478 N.W.2d 307, 309 (Iowa App.1991).

In summary, we first conclude the trial court did not err in disallowing certain testimony of Dr. Nieman; second, the court did not err in refusing to submit defendants' requested instruction of mitigation of damages; and finally, the court did not err in failing to grant a new trial or order remittitur for excess damages. We affirm the trial court in all respects.

AFFIRMED.